three minutes for rebuttal. Subdivision D2 of section 3161 of the Speedy Trial Act cross references the time exclusion provisions of subdivision H in that subdivision. And that is further proof that the subdivision applies to petty offenses, because the time exclusion provision of that's set forth in subdivision H uses the term offenses. In other words — Doesn't that cut the other way? I'm sorry? Doesn't that cut the other way? No. Were subdivision D2 not to apply to petty offenses, there would be no reason to incorporate the time exclusion provisions, because the time exclusion provisions of subdivision A apply to offenses. You're talking about petty offenses, but that's not the term we've been using. We've been talking about misdemeanors like class B and class C misdemeanors. Yes. I've sort of — And if that's what the — we ought to follow that wording, I suppose. Class B, are you suggesting class B is not a misdemeanor? This is not a class B misdemeanor? No, no. This is. And, of course, all the accepted — in the definition of offense, it incorporates both class B, C, as well as some military and infraction type. I didn't pick your argument up, but maybe you need to do it again. The periods — you're talking about the sentence that says the periods of delay enumerated in section 3161H. Is that what you're talking about? Yes. I'm referring to the time exclusion provisions. Okay. At the end of subdivision D-2, there's a sentence that states, two sentences, the periods of delay enumerated in section 3161H are excluded in computing the time limitations specified in this section. Right. And those apply to offenses. So why does that prove that the section doesn't apply to offenses? Because had that sentence not been in there, then the time exclusion provisions would not apply to subdivision D-2. Okay. And that shows that Congress was aware of when it used the term offense in a particular section or subsection and when it didn't use the term offense in a subsection. So, in other words, there was a need to refer to the time exclusion provisions because the time exclusion provisions only apply to offenses. And in order to make that reach of time exclusion broader, including for class B and C misdemeanors in those procedural postures such as the one that we find ourselves in, it was necessary for Congress to include that language. I still think it's the opposite. Since the time exclusions only apply to offenses, the only thing that's being excluded are the time exclusions that apply to offenses. Had subdivision D-2 only applied to offenses, which is what the government argues, then there would be no need to reference the time exclusion provision in that subdivision. And that's just to make clear that it applies to the subsection, because it's an odd subsection. It's also found in the next subdivision, which is E, which sets up similar procedural postures of providing for a 70-day trial clock. You've, you've, what do we do with Boyd? It seems to me Boyd decides the case, doesn't it? Not. It was an improper entrance. It was, we said it was a Class B misdemeanor, to which the Speedy Trial Act does not apply. Well, the, Boyd had two issues in it. The Speedy Trial issue was only asserted by the appellant in Boyd on the Class A misdemeanor. And of course, Class A misdemeanors are covered under the definition of offense. The Class B misdemeanor issue where the court, the Boyd court, makes that wrong statement that the Speedy Trial Act excludes Class B and C misdemeanors, that is, therefore, pure dicta. There was no need for the court to make that statement in dealing. So what you want us to do is write an opinion that what the Boyd case was dicta and wrong. Is that correct? Correct. That is correct. And of course, in that would mean then we would also be, in that opinion, indicating that Sixth Circuit and First Circuit cases which address similar issues, either directly or indirectly, are also wrong. Correct. And if we look at all the cases, the handful of cases that have dealt with Speedy Trial Act and Class B and C misdemeanors, the – there's really not been any analysis. We get a mere two paragraphs in any of these cases. And at first impression, I think most lawyers and most courts would believe that Speedy Trial Act doesn't apply to Class B and C misdemeanors. But when we actually read the Act, it doesn't – there's no express exclusion anywhere. Well, I think that's interesting. But what you're asking us to do is to tell another panel they were – it was dicta they were writing, and then create an inter-circuit conflict. No, because given that it is dicta, the appellant in Boyd, for instance, never made a Speedy Trial claim with respect to the Class B misdemeanor on appeal. So in order to resolve that issue, the Boyd court did not need to reach or say what it did say, talking about Class B and C misdemeanors are excluded. So given that it's dicta, this Court, it wouldn't be a conflict, given it's dicta. If that was so, you still have to make the affirmative case. And I am having a hard time seeing how your argument works. The entire section, 3161, is about any case involving a defendant charged with an offense. And your notion is that even though A and B and C all have to do with offenses, D doesn't. Is that basically it? D deals with trial court dismissals. Two particular situations. D-1 is a different procedural posture from D-2. Of course, D-2 was added by Congress in 1979 through amendment. It was not part of the original legislation. But what possible rationale could there be for requiring a Speedy Trial from the time of the original indictment and guilty pleas and so on, but not on remand? That's essentially your argument, that there's a special carve-out for some reason where the Speedy Trial doesn't apply to anything else, but it applies to that particular circumstance. There are five such circumstances, and they all deal with cases that have gone through the process already once. In the Nickerson case, an appeal after dismissal. In other situations that the subdivision E describes, retrial, a motion for a new trial, or a new trial grant after appeal or collateral attack. It makes rational sense to provide Speedy Trial protections in those five procedural postures where the case has been litigated through trial or an appellate level already once. So it's completely rational for Congress to treat those five situations as it treats what it calls offenses. And the fact is that Congress was very consistent. Subdivision E was part of the original legislation in 1974. Then five years later, they add the Nickerson procedural posture and write the statute or that subdivision, D2, in very similar terms to subdivision E. And in both subdivisions, Congress did not use the word offense. And we have to give credit to Congress leaving out that word, and we must give the same. But the incorporated sections, 3161H and 3162, do use the word offense. Yes. But the sanctions provision is just a remedy. It's by analogy, it's like saying in a drunk driving statute, the penalty for drunk driving is a reduction for burglary. That doesn't mean that we're importing any of the elements of burglary. It's just a reference to a penalty or a remedy provision. And that's all that is at the bottom. Well, what do I do with the congressional statute 18 U.S.C. 3172-2, which specifically provides that Class B misdemeanors are exempted from the Speedy Trial Act? How do I reconcile that? Well, the — there is no such express language. What the definitional statute states is that as used in this chapter, the term offense means, and then it accepts Class B and C misdemeanors as well as some others from that. So what we have to do is to take that definition and apply it in the other subdivisions. And that's all what we're doing here. I see my time is up. Well, okay. That's fine. Thank you. May it please the Court. Good morning, Your Honors. Owen Mardikin for the government. Over three decades, this Court has consistently held that the Speedy Trial Act does not apply to Class B misdemeanor. There's not really a square-on case, is there? Not in the same factual and procedural posture, Your Honor. I'd rather hear about the statute and how it works. I'm sorry? I'd rather hear about the statute and — it doesn't seem to me that if we really thought they were right that we couldn't — that there was any case that would necessarily preclude us. Well, I would say that United States v. Baker and United States v. Talbot, though they're in a different procedural posture, are actually making the broader holding. They're stating outright the Speedy Trial Act does not apply to Class B misdemeanors and petty offenses, other petty offenses, and then deducing from that, therefore, it doesn't apply here. I don't think they're making the narrow holding based on the facts or procedural posture in front of them. They're making the broader holding from the definition and citing the definition as saying the Speedy Trial Act as a whole does not apply to this class of Class B misdemeanors and other petty offenses. But I think that even if this Court weren't bound by those decisions, it has no reason to depart from them. And I think the United States v. Boyd gives this Court another reason why, because a lot of the Boyd decision had to do with whether the violation notice, basically a ticket, could trigger the Speedy Trial Act. And the Boyd court held a violation notice cannot trigger, does not trigger the Speedy Trial Act. Now, Class B misdemeanors and petty offenses are the only class of crimes that can be taken to trial on a violation notice or a citation. So in effect, the Court said that if a Class B misdemeanor is charged by violation notice and there is no information ever filed, then the Speedy Trial Act could never apply. So in effect, what the appellant is asking here is for the Court to slice and dice this statute even farther than simply saying Class B misdemeanors and petty offenses can, on remand, be subject to the Speedy Trial Act. They're also asking the Court to say, well, only those Class B misdemeanors that are charged by information, as opposed to those that are just charged by violation notice, could be subject to the Speedy Trial Act under some circumstances. So and there's certainly, there's no rationale for making that distinction. There is no rationale for leaving that decision in the government's hands to say, well, this is a Class B misdemeanor, the government's going to charge it by a violation notice, just because we can avoid the Speedy Trial Act in all circumstances, whereas we could charge it by information and then, according to the appellant's interpretation, under some circumstances, be subject to the Speedy Trial Act. And I think there's another important inconsistency going beyond that, simply looking at the statute, Section D. Section D-1 talks about cases that are dismissed by the trial court on motion and then refiled. And I believe the appellant's argument is that in that case, because there were defenses in that part of the statute, the Speedy Trial Act would never apply to a Class B misdemeanor. And yet D-2, in which a case is dismissed on, by the trial court and then reinstated after appeal, somehow in these certain circumstances, the Speedy Trial Act would apply. There's no rationale for that distinction. There's no rationale for Congress to say, if the government makes an error in charging and then refiles, the Speedy Trial Act does never apply to petty offenses or Class B misdemeanors. But in some cases where the trial court makes the mistake and this court then reinstates the case, then the Speedy Trial Act would apply. And I think that the appellant's colloquy with Your Honors about what Section H means or doesn't mean actually shows the reason why that can't be the case, because of this confusion of having to constantly imply from silence what is an offense and what isn't an offense. Congress couldn't have intended to create this sort of secret history of the Speedy Trial Act where we have to look word after word at the statute to try to figure out when the Speedy Trial Act applies and when it doesn't. Your opponent seems to argue that Section D-2, which does not include the word offense, triggers his argument. Why doesn't D-2 include the defined term offense? Well, I don't know. Is it necessary? It's not necessary. Because? The word offense is typically included in those sections that involve charging. In the earlier section, Section B, someone is charged with an offense by information or indictment. Even in D-1, where the government has to refile charges, they charge them with an offense. In D-2, there's no recharging. The case goes up on appeal and it comes back, just like this one. There's no recharging. So it's still the same. I mean, essentially, it seems to me what you're saying is that this is all a single context, and it only – the case that's going back and coming back had to start as an offense covered by other sections, and this is just a sub – a specific specification of a certain subcategory of instances for those same cases that are already within the system, so to speak. Exactly. And so the statute is trying to set out every conceivable procedural posture with – It nonetheless is unfortunate drafting. I'm surprised. That's true. The use of the word subsection and section in succeeding sentences is, you know, it's probably another reason for that comment about making sausage and making laws. And keeping lawyers busy. In effect, it does that. But yet, there is – there is not just looking at the statute as a whole for context. There's also looking at historical context. And Congress, in Section 19 of Title 18, defined petty offenses together to be Class B misdemeanors, Class C misdemeanors and infractions. And then in other rules, such as Rule 58, has treated them as a group. Petty offenses as a group do not merit a jury trial, appointment of counsel, a plea or a trial before a district court, or application of the sentencing guidelines. So consistently, they have all been treated as a group in the law and given a lesser degree of procedural protection than Class A misdemeanors and felonies. Can we talk for just a moment about the videotaping? I know we didn't have time with your opposing counsel. Yes. Tell me why the magistrate judge was wrong. Well, I think the core of the magistrates – well, I think there are two reasons. More broadly, I think the magistrates set the bar too low. The Supreme Court and this Court have set the bar very high and have used language to make it clear that that bar for outrageous conduct is meant to be high and not Well, this was fairly outrageous conduct. It seems to me that that larger – and if it had had anything at all to do with the offense, it would seem to me to be a pretty well within the reasons for which – the rare reasons for which conduct of this kind has led to dismissing the indictment. My question is, what did it have to do with the case? That's the problem. And I think that that question, Your Honor, focuses on the other problem with the magistrate's decision, which is he was, like Your Honor, is focusing on the particular case, saying, well, this woman was here. She was probably just going to be charged with a petty offense. She seemed like she's not a hardened criminal. But a police station can't make that distinction. Either the camera is always on or the camera is always off. If the police officers had discretion about when they were going to turn on the camera and when they were going to turn it off, then I think this Court would have reason for suspicion. If something had happened to Ms. Nickerson in that cell while some police officer had decided, well, I'm just going to turn the camera off while she's in there, then I think this Court would have questions. Why does a police officer in a station decide when and when he's going to turn on a monitor and when he's not going to turn it off? Well, even then, isn't that more appropriately a matter for a Bivens claim or a Section 1983 claim? It's not that she did not have a remedy if you believe this conduct was outrageous. There is a remedy through the civil, especially in this context where there isn't a direct nexus with the crime. Exactly. And that's why, Your Honors, the Ninth Circuit addresses this issue of bodily privacy in the context of these civil claims. The idea of outrageous government conduct is a – I mean, it's a judge-made concept that has evolved in certain specific areas, not to say it couldn't be expanded into other areas, but I think that this Court has been very careful about exactly what those areas are. My recollection, and it's fairly vague, of the young bank case we had a few years ago about strip searches in the San Francisco jail, is that there was a similar allegation with regard to watching people while they were in the bathroom. But, in fact, it didn't – either it didn't pan out or the jail stopped doing it, essentially. I mean, it's easy enough to – if you want to do that, you just, you know, put a curtain up or something, and if somebody really needs to be watched, you can individually watch them. But I'm surprised you're trying to justify the behavior rather than – or even argue that it's not outrageous, as opposed to simply saying this isn't the way we deal with a remedy for a situation like that because it had nothing to do with her conviction. Well, I take both decisions, Your Honor. I think it's procedurally not in front of the Court. Perhaps you're just worried about the 1983 case to follow, and perhaps that's a wise thing to be worried about. But I would think that there – that there could well be a viable 1983 case to follow. And clearly, the appellant had that option. Whether she intends to take it in the future, I guess, is up to her. But unless Your Honors have any further questions, I'm going to submit them. Thank you very much. I honestly – I think you have a minute left, so I honestly don't remember. Counsel mentioned Boyd and the violation notice. Our position is that the Boyd result was the correct result because the 3161 subdivision dealing with the violation notice and the 30-day rule does use the term offense. So therefore – But the result of your argument is to cut up the – even the class of – of class B offenses between the ones as to which there is an indictment of information filed and ones as to which there isn't. Correct. As Congress stated it in each of the different subdivisions, government wants to read in the Act that Congress accepted these particular misdemeanors from its application, but Congress never said that. Congress said, indeed, when we use the term offense, this is what we mean. And therefore, when in a subdivision the term offense is not used, it means something else. Well, nothing is used. That's another problem. If it doesn't apply to offenses, what does it apply to? Anyway, your time is up. Thank you very much. Thank you. The case of United States v. Nickerson is submitted. We will go to United States v. Carter. Yes, sir? May it please the Court, Jason Carr appearing on behalf of
judges: Zouhary, Wallace, Berzon